ORIETTE LOWE *vs.* CHARLES E. ANGELL *et al.*

JUNE 29, 1922.

PRESENT: Sweetland, C. J., Vincent, Stearns, Rathbun, and Sweeney, JJ.

(1) *Gifts Causa Mortis. Finding of Facts by Justice without Jury.*

Where a justice sitting without a jury found that a gift *causa mortis* was made to complainant of certain bank books and his findings were warranted by

the evidence, such finding of facts will not be set aside under the well settled rule that a decision upon facts by a justice sitting without a jury will not be disturbed unless clearly wrong.

BILL IN EQUITY on facts set forth in opinion. Heard on appeal of respondent and dismissed.

RATHBUN, J. This is a bill in equity brought against Charles E. Angell and the Industrial Trust Company. The case is before this court on an appeal from a decree of the Superior Court. Said decree embodies findings made by the Presiding Justice of said court and decrees that the two deposits, described in the bill of complaint, standing in the name of Alpha B. Salisbury in the Industrial Trust Company on participation account belong to the complainant, Oriette Lowe, by gift *causa mortis* from Alpha B. Salisbury and directs said Industrial Trust Company and Charles E. Angell, administrator, to pay said deposits with the accrued interest thereon to said Oriette Lowe after the payment from said deposits of any debts or charges of the estate of said Alpha B. Salisbury legally chargeable against said fund.

It is admitted that said Salisbury signed orders (which are referred to by some of the witnesses as "checks") addressed to said Trust Company directing the payment of said deposits to the complainant. Each of the orders bears the date of February 3, 1921. The signature on each order was witnessed by Frank A. Wender, who, at the time of witnessing, was employed as a nurse for said Salisbury. On either February 5th or 6th, 1921, Salisbury asked Wender, in the presence of the complainant, to witness his signature to said orders. Wender testified that he witnessed said signatures on February 6, 1921. The complainant testified that the signatures were witnessed on February 5, 1921; that while she was visiting Salisbury on said date he said, "While I think of it, open that drawer in my dresser. I have made out a check for my bank books payable to you with interest;" that she opened the drawer and passed the books

to him; that he handed them back to her and said, "I am going to give these to you;" that the signed orders dropped from the books when he opened them. She testified, "I put them back in the drawer. . . . Mr. Wender had brought in the broth Mr. Salisbury was going to have, and he wanted me to feed him. I put them back in the drawer and left them there that night. I had other bundles to carry when I left the house. . . . The next day, Sunday, I was there; he spoke about the books again. He said, 'I am going to give you these books because I want you to have them. You may need it. You are not working steady. You are down here spending a lot of your time, I want you to have them.' I took them home that night." Wender testified that he saw Salisbury give the bank books to the complainant and heard him say that he wanted her to have the money to use in taking care of herself.

On February 15, 1921, Salisbury was very ill and was taken from his house to the home of respondent Angell where he died within a few days. Just before Salisbury was taken from his house he asked the complainant to take the box, in which he was accustomed to keep his bank books and valuable papers, and take care of the box and contents.

Respondent Angell was appointed administrator of the estate of Salisbury and said box was delivered to Angell. Some time after his appointment Angell obtained from the complainant the orders and bank books in question and inventoried said deposits as a part of said Salisbury's estate.

The complainant contends that respondent Angell promised, when she delivered said bank books and orders to him, to have said deposits transferred to her on the books of said Trust Company. Her testimony to this effect was corroborated by the testimony of her brother. Respondent denies that he promised as the complainant contends but admits that before he obtained the orders he told her that he would take them "down and put it up to the court," and that he never brought the matter to the attention of the

Probate Court. He testified: "Did you take the bank books back? A. No; just the checks. I returned them to Miss Lowe and advised her to make them out as a bill and make the bill against the estate."

The respondent contends that Salisbury never made a gift of the bank books to the complainant; that Salisbury intended to give said bank books to her, not for her own use but to hold the deposits as a trust fund to be used by her in supporting his father in the event of said Salisbury's father surviving him; that said orders, although signed, were not delivered to the complainant until February 15, 1921; that on said date said bank books and orders were in Salisbury's possession in the box where he kept his papers and that the complainant obtained said bank books and orders on said date when she, at the request of said Salisbury, took said box and contents for safe keeping, and that on said 15th day of February Salisbury was, owing to disease, mentally incompetent to make a gift. Salisbury's father deceased February 6, 1921, in the lifetime of said Salisbury and it is suggested that even although a conditional gift in trust was consummated the trust failed with the condition. Respondent Angell relies chiefly upon his own testimony and the testimony of his wife to support his contention that Salisbury never consummated the gift and only intended to make a conditional gift in trust. Angell testified that on February 6, 1921, the complainant made certain statements in the presence of himself and his wife. He testified as follows: "Well; I can't say just what time of day it was; after his father's body was removed we were in the kitchen that is right out of the sick room, Miss Lowe, my wife and myself, Mr. Wender had gone to the city for a change of clothing, and during the conversation Miss Lowe says: 'The other day Al called me in and said: 'Etta, our bank books are in that box or drawer,' I wouldn't say which, 'and I have made out a check payable to you. If anything happens to me I want you to promise that you will look out for my father as long as he lives' and she said: 'I

promised.' She said: 'I don't know the amount of the checks or check; I haven't looked at them.'" Mrs. Angell's testimony as to what complainant said on February 6, 1921, while tending to some extent to corroborate her husband's testimony, contradicts his testimony on some of the important details. The complainant denied making the statements attributed to her. The evidence warrants a finding that at the time the gift is alleged to have been made Salisbury and the complainant were, and had been for several years, engaged to be married. He relied much upon her advice and she had assisted him in his business. Nothing has been suggested to indicate that a gift of the bank books by Salisbury to the complainant would be unnatural or unreasonable conduct on his part.

Whether Salisbury on either February 5th or 6th, 1921, intended to make an absolute gift of the bank books to the complainant and consummated his intention by delivering the bank books to her was a question of fact. This court has frequently said that the findings of fact made by a justice of the Superior Court sitting without a jury will not be disturbed unless such findings are clearly wrong. The trial justice found that on February 6, 1921, said Salisbury made a gift *causa mortis* to the complainant of the bank books in question and that said deposits represented by said bank books are the property of the complainant. His findings are warranted by the evidence.

The respondents' appeal is dismissed. The decree appealed from is affirmed and the cause is remanded to the Superior Court for further proceedings.

*Joseph H. Coen*, for complainant.
*Daniel H. Morrissey*, for respondents.